And good morning, everyone. The first argued case this morning is number 2014-1326, Reliable Contracting Group against the Department of Veterans Affairs, Mr. Williamson. Good morning. May it please the court, I'm Reggie Williamson on behalf of Reliable Contracting Group, LLC. This case comes before the court because the VA misinterpreted the contract when it rejected three unused generators that were delivered to a project site under the contract's definition were new. According to the record, when they initially rejected the generators, you didn't argue with them. You agreed that they were in bad shape one way or another. How do you overcome that? Your Honor, when they were delivered, initial reactions on the project site were that they appeared to be in an unacceptable condition. The supplier put together a proposal and they proposed certain steps to conform the generators to the contract. To repair them? Your Honor, not to repair them. It would have addressed cosmetic issues, paint and dust, and it would have addressed whatever testing issues the VA may have had. Factory certified technicians from the generator manufacturer were brought on site and were prepared to do whatever test the VA would have required. These were left out for four years, right? Improperly stored. Your Honor, they were in weatherproof enclosures. They were in storage outside, but they were within weatherproof enclosures. Is that in the record? Yes, Your Honor. Is that from Buell's affidavit? Yes, Your Honor, from the affidavit of James Moll. Are there any fact findings about the extent to which the generators appeared to be unacceptable? There are facts available in the record regarding the condition of the generators. The best evidence as far as the condition of the generators comes from the proposal of the supplier where they proposed to fix whatever issues there may have been with the generators. Most of the proposals dealt with what can be characterized as cosmetic issues. Dust, rust. It can be characterized. It can be characterized. It can also not be characterized as cosmetic issues too, right? Yes, Your Honor. I believe the way they were characterized in the contemporaneous documents was preconditioning. Would it be the equivalent, say, for example, of a new car being shipped to the factory that gets a dent in it? It wouldn't be the equivalent of a dent. It would be the equivalent of dust on the car, which would not be uncommon if the car were shipped to the dealership. It would have dust on it. The issue of rust wouldn't apply to a new car, but it's not... If you consider the intended purpose of these generators, and these aren't show ponies. These are workhorses. Is there any evidence in the record other than Buell's affidavit as to what the industry considers new to be for these types of generators? The evidence in the record regarding new comes from James Moll. And then there's James Moll. Moll, yeah. Yes, Your Honor. The government didn't put on any testimony that contradicted what Moll said. That's correct, Your Honor. But Moll didn't address the question of how pristine the generators had to be to be new. He said that they could be previously owned, they could have been around for a while, but he didn't say that the industry definition of new allowed them to be damaged. And it can't be that new simply means that it hasn't been used as a generator. I assume you agree with that. If there were serious damage to the generators, even though they hadn't been run as generators, they still wouldn't be new, would they? Mr. Moll, who has decades of experience in the industry, testified that the work to be performed on these generators is referred to as a... No, no, but you're not answering my question. I know you contend that the damage was cosmetic. That's a separate question. My question is, let's assume that the damage was more than cosmetic. You don't contend, do you, under those circumstances, that the generators would qualify as new? Under this contract's definition of new, we contend that the only issue is whether they had been used or not. So is the answer that even if they were heavily damaged, they'd still be new? It would invoke the issue of substantial compliance, and the contractor would have to conform the generators to the specifications. And if the contractor couldn't... So is the answer that they can be seriously damaged and still be new? They could be seriously damaged. If they could not be conformed to the specifications, they wouldn't satisfy the specifications. They can be seriously damaged, but as long as they could be repaired, they would still qualify as new. Yes, Your Honor. That seems to me to be a stretch, and I don't understand your witness to have said that that's the way the industry would define new. Your Honor, Mr. Moll didn't testify to serious damage. Mr. Moll testified to the experience of these three generators. And how do you overcome the contemporaneous reaction where, according to the record, your response and that of your subcontractor was that this is totally unacceptable by any standard? You're saying that the government had an obligation to say, oh, let's see if we can dust it off and fix it, even though it obviously has weathered very badly. It's rusted. It's been untouched for four years. How are you going to know if it works or not? You're saying the government had an obligation to see if they could be rehabilitated to about new? Yes, Your Honor. The initial reaction of Reliable, and Reliable is here today. Reliable has passed on the claim and has certified the claim. Reliable's initial reaction was that these appear to be in bad condition. The initial reaction of the senior resident engineer was that they appear used. But Reliable allowed all the facts to come in. When it was investigated by Cummins and Cummins sent folks out to the site to look at the test run time, it turns out they weren't. They had not been put at ease. The contracting officer was, in essence, saying, Reliable, your reputation as a contractor is at stake here. It didn't seem to me to be surprising that Reliable would say, okay, maybe a problem. We'll look at it. Was there any evidence in the record to counter your contention that this damage was cosmetic? Introduced by the Department of Veterans Affairs? To me, I saw that in Muell's description that this was cosmetic damage, but I didn't. Judge Dyke was asking a question that went beyond his question about, you know, whether or not something that was in terrible shape, beyond cosmetic, didn't assume arguendo that if it was cosmetic only, it wouldn't be a problem. So my question is, is there anything in the record that shows that the generators were more than cosmetically injured? There's no evidence in the record showing that they were more than cosmetically injured. Well, what about the original statements that were made by your client and the others? Didn't they suggest that the damage was serious enough that they didn't qualify as new under the contract? There's no contemporaneous statements from Reliable or Fisk that the damage was so serious that they wouldn't qualify as new under the contract. No, but there is statements that looking at the generators because of the bad condition, they didn't qualify, right? There's no statement from Reliable or Fisk saying that the generators were in such a condition that they could not qualify as new under the contract. If we take the case the way it's served up to us, we have a decision from the board, and the board says that these generators are not new because they're not capable of being tested at the factory. Correct. So, and your contention is that, assuming arguendo, that that's the correct interpretation, there's no substantial evidence to show that these generators couldn't be tested. There's no evidence saying they could not be tested. The board found that they weren't capable of being tested at the factory. That's what I mean. So, we do know that they were capable of being removed from the site because they were sent to another site to be tested, right? Yes, Your Honor. And we don't know anything in the record about where Cummins factory is or whether factory testing means at the factory as opposed to someplace else under the supervision of the factory. Correct. So, the government doesn't have any evidence to support the proposition that these generators were not capable of being factory tested. Correct. As far as whether they were capable of being factory tested, they were capable of being put on trucks, and they were capable of being shipped to the Cummins factory. The more reasonable approach taken by the supplier was to bring factory certified technicians on site, and there's testimony from Mr. Moll that these tests, specifically the quick start tests… We don't know whether that satisfies the contract requirement for factory testing because it was never adjudicated. Under the holding of grant and construction, the doctrine of substantial compliance, you can't insist on strict compliance with the specifications purely for the sake of strict compliance with the specifications. If the VA had come out to the test, and they refused to attend the test, but if the VA had come out to the test and said, guys, we appreciate you bringing factory certified technicians on site, but what they did here today is not going to get it done. We really need these done at the factory. We could have shipped them to the factory, but the VA didn't do that. The VA… You're telling us that 4-year-old, previously owned, rusty generators were in substantial compliance, and the burden shifted to the government to bring them into compliance? Yes, Your Honor. The generators were rejected for not being new. I don't think the precedent goes that far. On the issue of new, under the contract, whether they've been in storage or not would not make them not new. And the project personnel's definition of new, that previous ownership makes them new, which the VA has abandoned that argument, that also does not go to new. The only issue for new is whether they've been used or not. As far as the other issues, under Granite, the contractor could have conformed the generators to the specifications. As far as the cosmetic issues, if there's an issue with dust and the specifications say the generators can't be dusty, under the proposal to repair them at OK Generators, they could have cleaned off the dust and conformed them to the specification regarding dust. As far as the factory testing specification, if it says that quick start tests and low start tests have to be performed on these generators. We have factory certified technicians on site to conform the generators to that specification. But you're saying if it works, it's new. Is that what I hear you saying? The definition... Can they be made to work? Can they be cleaned up to work? Yes, Your Honor. For new, the definition of new goes to use. But a contract specifically defines new. By incorporation, by reference, doesn't it? Yes, Your Honor. It's the interplay of two FAR provisions, the material and workmanship provision. And the government's not disagreeing with those three provisions that are in the contract. The question is how do you interpret? We disagree. I think the government would say that the material requirements definition of new may not specifically define new in the material and workmanship FAR provision, but they at least have to be read consistently. I think we both agree that they have to be read consistently. And the way new is defined in the material requirements FAR provision is composed of previously unused components. And everyone agrees that they should never be used. The question is what used means. I mean, does used mean run as a generator, or does it mean used in the sense of being in good as new condition? And, you know, everybody agrees these weren't run as generators, but I have difficulty with your suggestion that if the thing was seriously damaged, that that could qualify as a new generator within the contract provision. And I'm surprised that there isn't more attention being paid here to the dictionary definitions, which do suggest that it should be fresh that is in new condition. Don't we have a Buol giving an affidavit saying in this industry that something is considered to be used once it's cranked up and for its intended purpose at its site. Meaning that its age is irrelevant. Correct. There's a formal moment when a generator goes into use. These are very big pieces of equipment. These are huge industrial pieces of equipment. But your guy does not say that it can be damaged and be new under industry practice. He addresses the question of whether it can be old as opposed to recent, but he does not say the industry practice is to characterize something which is damaged as new. Right? Your Honor, he doesn't testify to that. But the actual, the issues here, Mr. Moll wouldn't characterize as serious damage or damage. He'd characterize them as common. If you were looking on the question of damage, which as Doug suggested, dust, for example, if you transport this thing on a truck and it arrives and it's got some mud on it because it went through a mud puddle, that's a form of damage, right? Correct. So it's hard to believe that there are shades of damage that would take something out of the category of being new, right? Correct. And there could be damage, so significant damage to the generators that they could no longer be considered new. That would be a matter of industry custom. Under the contracts definition of new, it just goes to use. But here, the testimony was clear from Mr. Moll that what was going on with these generators wasn't serious damage. It was minor issues, dust and paint and repairing some rubber hoses. But in the context of big industrial generators, they're minuscule issues. They're minor deviations within the meaning of granite construction. All right. Let's hear from the government. You have a little time left. Mr. Grimaldi. Good morning, Your Honors. May it please the Court. Your Honors, we're interpreting a contract here, and we should start with the plain meaning of the contract. What we have here is a contract that discusses new, what is new equipment for this construction contract, in three germane sections, two which are general, one which is generator specific. The first being 147A of the general conditions. And this is JA79. And this says that the equipment that must be material to be used in this construction contract must be new and of the most suitable grade for the purpose intended. And what this is is a reprint of an older FAR clause, 52-236-5 from 1984. We then have another section that incorporates a different FAR clause, and that's 52-211-5. And that's JA98. You won't see the text of that FAR clause there. It's simply incorporated within, but it's still, the contractor must comply with it. And it says that, of course, the item must be made of previously unused components, but also it says, quote, provided the supplies meet contract requirements. So in order for anything to be new under this contract, it must be of the most suitable grade for the purpose intended and provided that it meets the contract requirements. And what are the contract requirements for these generators? We have to look at them, the specific ones in the contract, and that's 16-208 is the section in the contract. And that's JA300, Your Honor. Now, this says that there must be a factory testing with a load test and a quick test, start test. So that is a requirement of the contract, factory testing for these generators. To be new, they must meet that requirement under both. You're agreeing with the interpretation of the contract that the board put on it? It is consistent with the plain meaning, Your Honor, yes. So to be new, they have to be capable of being tested at the factory? They have to be tested at the factory, Your Honor. They have to be capable. That's the language in the opinion? Well, I would go as far as to say they need to be tested. Am I correct? I believe it is, Your Honor, yes. And then you say that the board then said, clearly they've been in storage for four years. They could not be factory tested and, therefore, don't meet the meaning. What's the evidence in the record that they could not be factory tested? Yes, Your Honor. We're looking at a substantial evidence standard here. Just give me the facts, please. The facts. And we can look at JA4 and 6, which is the facts section of the board's decision. 4 and 2, 6? 4 and 6, Your Honor, two different pages. And what particular – I'm looking for a particular fact. I'm going to read directly for you, Your Honor. We know these generators were capable of being removed from the site and taken to a testing place, right? Right, right. So we know they're capable of being moved. Correct, Your Honor. It's not like they were too big to be moved, right? Right, Your Honor. So specifically to answer your question, which I think is a little different than what I was going to say to Your Honor, is what prevented them from being moved to the Keenan's factory, Your Honor? I want to find substantial evidence to support the holding, the holding here that these particular generators can't be new because they could not be factory tested. Right, Your Honor. So the first step in factory testing would mean you've got to be able to take them and take them to a factory, right? That's correct, Your Honor. So were these generators capable of being moved? Yes, they were moved away from the VA site. Were they capable of being tested once they got moved? I'm not sure the record says they ever were actually tested, but there's nothing to say they couldn't be tested. They were fired up, weren't they? They were hooked up to a computer to test to see how many hours they had been used. So you're saying that they were capable of being moved and they were capable of being tested? Correct, Your Honor. Now, is there any evidence in the record that says that Cummins Engine doesn't provide a facility or a place where they could be tested? Only from the fact that Reliable did not propose that as— Forget about whether they proposed it. The holding here is that these particular generators flunk the definition of new. Now, the definition of new may be wrong, but you're saying this is the correct definition of new. Yes, Your Honor. And I'm just saying where is the evidence that these generators couldn't have been tested? They were temporarily and physically removed from the factories by four years, and we're not quite sure of the distance, Your Honor. Are you saying that four years, something can't be tested in a factory after four years? Well, it certainly could be tested at the factory after four years, but I think when we're looking at the substantial evidence standard, and it's less than preponderance— You need, when you're going to say there's substantial evidence to support something, you have to point to something that's a fact. Yes, Your Honor. And it may be a tiny little fact. Oh, yes. Or maybe a fact over which people would disagree. It's not a lot here, Your Honor. But you've agreed with me thus far that these generators were capable of being taken to a factory. Yes, Your Honor. And you say there's no reason to believe they couldn't have been tested, so I'm saying where is the substantial evidence to support the holding? A reasonable man could decide that after four years of sitting in a storage removed from a factory, the generators could not be tested at that factory. Really? Yes, Your Honor. And where is that statement anywhere in the record? It's only in the discussion— You just made it up right now. No, Your Honor. It's right here on JA8. Clearly, the Cummins generators, which had been in storage for four years— I know, but I mean, in order for a judge to say a fact, there has to be something to support it other than the fact the judge said it. Otherwise, I could, you know, think what I could do. Sure. Yeah, absolutely, Your Honor. The fact that they were removed for— I mean, excuse me, they had been sitting out for four years. That is the fact, Your Honor. That means they can't be tested. We know they can be taken to the factory. Sure. Maybe they could be tested and it would prove that they won't work because they've sat out before. It certainly could prove that, yes, Your Honor. But that wouldn't prevent them from being tested. A reasonable man could determine that four years being away from the factory, the factory wouldn't take it back, for instance. We're only looking at what a reasonable man would decide to do. I think a reasonable man would conclude that if it had been sitting out for four years, if you took it to the factory and tested it, there was a chance that it might not work properly, depending on what kind of equipment it is. Correct, Your Honor. That's another way to look at it. They did use the word clearly here, Your Honor. They could have said reasonably— But it says—it doesn't say—it says it could not be factory tested. That's correct, Your Honor. And you've already told me it could have been factory tested just now. Theoretically, these generators could have been driven to the factory, but there's so many speculations here, Your Honor. Humans would have to open the doors to accept them in. There's nothing in the— From what speculation? That humans would actually— These great big pieces of equipment that, you know, were made a long time ago that are dusty and scratched. I mean, when you move a great big piece of equipment like that, it's probably going to get scratched and dented, right? But what makes you think it could—the experts, when it was taken off to be looked at, said that they tested it to see if it would work. Well, it's not that they're just dusty and scratched. As Your Honor has already talked about, they're unacceptable. Reliable has said these generators are unacceptable. Well, I appreciate the fact that Reliable, who is as far removed from the generators as you can get, it's like a corporate holding company, and then they have a subcontractor named Clevenger, and then the subcontractor subs to a guy named Dyke, who goes and buys these things. And all Reliable knows is that it has a reputation with the VA, which it believes is pristine and beautiful. And when Mr. Romano, the contracting officer, says these things stink, it doesn't surprise to me that Reliable says, well, maybe they do, we better look into this. Well, but that's certainly evidence, Your Honor. And then they look into it. Right. And all the evidence when they look into it is that these things have minor cosmetic problems. Minor cosmetic problems. Your Honor, that is testimony that was given at the board. It wasn't contemporaneous. If we look at the contemporaneous evidence of what was going on with these generators. I know, but I mean, at least from my perspective, it doesn't do to say we'll decide this case against Reliable on the grounds that it originally said, gee whiz, there may be a problem, we better get to the bottom of this. But they didn't say maybe a problem, right? They said there is a problem. Yes, they said unacceptable. Now, Your Honor, they might be a holding company. They're in privity with the government here. They are the general contractor. They are responsible for everything that happens at this construction site. And they're responding to Romano, who was all heated up about these things are totally unacceptable. And instead of placating, I mean, they shouldn't have placated him if that's what they were doing, Your Honor. They said that they were unacceptable. Why would they say they were unacceptable if they didn't believe they were unacceptable? I mean, that's the business that you're going to tax Reliable for being politically correct and responding to the government's contracting officer is not a basis that the decision was made. We're reviewing a decision of the board. Right, Your Honor. Did the board decide it on the ground that Reliable had confessed that the goods were not new? That's nowhere in the board decision. It is in the board decision that they made no effort to say that they were new. And I can read that to you, Your Honor. Further, it appears that at the time when the cumens generators issues arose and was being addressed by the VA, neither Reliable nor Fisk, the subcontractor. Because they've been challenged as not new, and Reliable is going to hold its peace until they know whether they think it is new or not. Until after they were rejected, actually. Muell, who is testifying for Reliable, swears that they are, under industry standards, new. But not under the contracts. He swears in an affidavit. He can swear all he wants about the industry standard, Your Honor, but we have to look at the plain meaning of the contract. The contract requires something different. It requires them to be capable of being factory tested, which you told me today they were capable of being factory tested. I don't know that, Your Honor. I did not say they were capable. Under the hypothetical, that they could be driven there, yes. That they could be tested somehow. But there's no – your obligation is to put evidence in the record to show that they're not capable of being factory tested. Correct, Your Honor. And the evidence that was put in was simply the temporal and physical separation. They were four years old, so they couldn't be tested? That's correct, Your Honor. That is the evidence upon which the board relied. But these generators are unacceptable, Your Honors. We have on JA120, which is the plan, the proposal that Reliable put forth, for OK generators, not humans generators, to test these. They show that there's going to be tests and evaluation and adjustments as necessary. No one knows at this point what these generators are capable of, if they function or not, Your Honors. So here is the actual proposal. That's not relevant to whether or not the generators were capable of being factory tested to prove that they were no good. Right, but it's Reliable saying that we're not even going to bother having them factory tested. We're going to have OK generators test them, which is not – Factory generators test them in the presence of a factory representative. It's not factory testing, Your Honor, in the plain meaning of what factory testing is. We don't know what that means. We do not know what factory testing means in the context of this evidence, right? We're interpreting a contract – Do you know where these things were made? I do not know where these generators were made, Your Honor. But we are interpreting the contract, so it's de novo review. So this court can decide that factory testing is testing in effect. And so what happens if Cummins says factory testing means testing at our facility in Florida, which is a testing facility? I mean, there's a difference between a factory that makes things and then a factory that maybe exists for testing things, right? But there's no evidence in this record about what factory – maybe there should have been, but there's no evidence in this record. Correct, Your Honor. There's no evidence as to what Cummins considers to be factory testing, but there is evidence of what the bargains have already bargained for, and that is factory testing. The vernacular is that testing at the factory. There could be a third scenario, as you envision. No, I'm just saying still that I'm just trying to say I'm reviewing a decision that was made. So the decision said the reliable loses because these three generators were not capable of being tested at the factory. And all I said was where's the evidence to support that proposition? If there's no evidence to support the proposition, it falls, right? Yes, but there is evidence, Your Honor. If they're temporally or physically – That they're four years old. Correct. So for us to decide the case, we say four years old is too old to be tested at the factory. It is – a reasonable man can believe that four years old is enough for it not to be factory tested, Your Honor, because it's substantial evidence. Is it just a reasonable man out in Lafayette Park, or is it a reasonable man who knows something about generators? It's the reasonable man. It doesn't have to be an expert. The reasonable man standard is the common man, not an expert in the field. So for substantial evidence, it just needs to be the – Was that really so? So you would have – say, for example, you were thinking about a procedure in the operating theater in the hospital. Would just a reasonable person on the street be the person you would use to tell you what a proper test is? Well, I feel like that example, Your Honor, I don't think we'd be reviewing something like that under a substantial evidence standard. I think it would be a little different in that case. We'd probably be having expert opinions on that. This is a – You didn't – the government didn't put any evidence in this record to contradict Mr. Muell's testimony as to what the industry thinks about these great big pieces of equipment that, according to Mr. Muell and not contradicted, frequently sit around for two or three or four years without being put in use before they're put in use. Correct? I don't believe that there's any evidence, Your Honor. No, no, no. It was – as I've repeated, Your Honor, it's simply the temporal and physical. And as Judge Dyke mentioned earlier, Mr. Muell's affidavit overcomes your notion that four years old is too old to be tested. Maybe damaged too badly means that it can't be tested. Correct. But that's not what you're hanging your hook on. You're saying four years. Well, I think we've exhausted this point. Is there – you have three seconds left. Is there anything else that you need to tell us? I just – really quickly, Your Honor, it's about substantial what – what I was saying, substantial compliance. It's actually a substantial performance here. We're dealing with a construction contract. There is no opportunity to cure insubstantial performance. It is a construction issue, not a supply issue that's often seen in, I guess, analogous to using – How do we know it's a construction contract as opposed to a supply contract? Why is this a construction contract? It's for the construction of a utility center, electrical distribution plant at the VA Medical Center. And one can see that – I believe that's on the first page of the decision, Your Honor, so I can give you the citation for that. Was it for the original construction or was it for the replacement of the backup generator? No, it is for the design and construction of a new utility plant and electrical distribution center at the VA MC, which is the medical center in Florida. What these generators were are the backup generators that were supposed to be provided, installed, and part of the whole working system. This is not a supply contract. It is a construction contract. That's the cases upon which reliable relies upon are enacted. If the Court has no further questions, we respectfully press the Court to affirm the decision. Okay, thank you, Mr. Grimaldi. Okay, Mr. Williamson, you have three minutes. Yeah, we'll restore the rebuttal time. Your Honor, to the first issue, the distinction between substantial compliance and substantial performance, granted construction case like this case was a pass-through claim by a general contractor on a construction contract involving the supply of product, just like in this case. So the holding of this Court that created the doctrine of substantial compliance involved the exact same facts as this case. There is no distinction, as my friend urges, between the doctrine of substantial compliance versus substantial performance. Granted construction trumps the site to national subpoena. As far as the finding from the Court that there's evidence supporting the fact that these generators could not be factory tested, entirely relies on reading into the factory specification this temporal limitation. And if the VA wanted such a specification, they could have easily drafted one. Before leaving the factory, dot, dot, dot, these tests had to be performed. But there is no such language in the specification. No, the specification said new. You still haven't overcome that the specification says they're new. Your Honor, from our perspective, it's two issues. The issue of new under the material and workmanship clause, and then this issue of whether we complied with the factory testing specification. There's no connection. There's no reference to this issue of new in the factory testing specification. So you're saying that if, in fact, the previous owner over these four years had used them, nonetheless, the question is whether, at the shape they were in, they had to comply with the specification? To the issue of new, if the previous owner had installed these, commissioned them, put them into use, case closed, these are used generators. They're not new under the contract, period. But that didn't occur here. These generators were not used. They sat in storage. They sat in storage. They were procured out of storage. They were delivered. When all the facts came in, it turns out these generators had not been used, and then the supplier proposed, submitted a proposal to Reliable, which Reliable, despite its initial reactions to the generators, passed on to the VA, and the proposal said, this is how we're going to make these generators comply with the contract. We're going to do the buff and puff. We're going to clean these up, and we're going to run whatever test the VA wants to run. The VA refused to attend the test. So the very same issue the VA now relies on. Well, there's no evidence in the record what test did or did not occur. There's no evidence in the record supporting whether these could have received proper testing at a Cummins-authorized dealer by Cummins-certified technicians. It's the very test the VA refused to attend, refused to attend. Now, factory testing was not an issue at the time of rejection. It wasn't raised by the senior resident engineer at the project. It wasn't raised by the contracting officer in his final decision in 2012. It wasn't raised until the VA's lawyers raised the issue in their brief. Having flashed back the specifications, they found a specification that they determined wasn't sufficient evidence in the record to support, well, we don't know if these generators were factory tested or not. Thank you, Mr. Williamson. We've exhausted your time, Mr. Grimaldi. The case has taken under submission.